IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Larry James Tyler, | ) | Civil Action No. 2:24-05075-MGL-MGB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Warden Coe, et. al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Larry James Tyler ("Plaintiff"), a state detainee proceeding *pro se* and *in forma pauperis*, filed this civil action on September 13, 2024, alleging violations under 42 U.S.C. § 1983 and state law. Before the Court are Plaintiff's Motion for Preliminary Injunction and for Temporary Restraining Order (Dkt. No. 107); Motion for Order to Show Cause and for Temporary Restraining Order (Dkt. No. 110); and Motion Seeking Court's Injunction (Dkt. No. 126).[1] For the reasons set forth below, the undersigned recommends Plaintiff's motions be denied.

## BACKGROUND

Plaintiff is involuntarily detained at the Darlington County Detention Center (the "DCDC"), held on contempt charges and awaiting sexually violent predator ("SVP") proceedings. *See Tyler v. Dir. of Darlington Cnty. Det. Ctr.*, No. 9:22-cv-01623-MGL-MHC, 2023 WL 3587889, at *3 (D.S.C. May 2, 2023), *adopted by*, 2023 WL 3587212 (D.S.C. May 22, 2023). Plaintiff's allegations mainly arise from an assault that occurred at the DCDC on August 24, 2024. (*See* Dkt. Nos. 1; 41.) More specifically, Plaintiff alleges that he was "struck on the side of [his] right head, right on the eye socket . . . with some hard object" by another inmate, Defendant Travis

---

[1] Pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.), pretrial proceedings in this action have been referred to the undersigned United States Magistrate Judge.

Boykin. (Dkt. No. 41 at 7.) Plaintiff alleges his "right eye lids swelled and closed" and he "could not see for 5 days." (*Id*.) Plaintiff alleges that "medical, head [sic] by [Defendant] Shannon O'Neil, finally let [Plaintiff] see only a practitioner for less than fifteen minutes" on September 6, 2024. (*Id*.) According to Plaintiff, at that visit, "the practitioner said [he] had trigeminal nerve pain."[2] (*Id*. at 9.)

Plaintiff alleges that prior to this assault, Defendant Captain Allison Days, "with the approval" of Defendant Warden Coe, put Boykin in Plaintiff's cell. (*Id*. at 7) Plaintiff alleges he told Captain Days that he should not have had a cellmate because he is a "SVP detainee." (*Id.*) According to Plaintiff, "Captain Days knew Boykin was a violent prisoner with mental record as well, yet she still put him in the cell with [Plaintiff]." (*Id*. at 8.) Plaintiff alleges that he asked Captain Days to remove Boykin "about two weeks later because [Boykin] kept complaining about smells, that [Plaintiff] stink[s]." (*Id*.) According to Plaintiff, "about three days after [Boykin] was put across the dorm, he attack[ed] [Plaintiff] from behind." (*Id*.) Plaintiff alleges that "no officer [was] in the dorm at the time" of the attack. (*Id*.)

Plaintiff alleges his "right eye is now permanently damaged, out of focus and black spots float[] in [his] vision," and he has a "very sensitive and painful to the touch nodule on the right side of [his] head at the eye socket." (*Id*. at 8–9.) Plaintiff alleges that his "chronic pain has increased since the head injury, but the practitioner will do nothing to relieve the pain [he] get[s] early mornings." (*Id*. at 9.) According to Plaintiff, "medical, Shannon O'Neil, refuse to take [him] to a hospital to see a doctor or optometrist so there will be no record outside the jail's medical record." (*Id*. at 8.) Plaintiff alleges he has "sent several kiosk messages to Coe asking him to also

---

[2] "Trigeminal neuralgia . . . is a condition that causes intense pain similar to an electric shock on one side of the face. It affects the trigeminal nerve, which carries signals from the face to the brain." Trigeminal neuralgia, *Mayo Clinic*, https://www.mayoclinic.org/diseases-conditions/trigeminal-neuralgia/symptoms-causes/syc-20353344 (last visited Sept. 26, 2025).

fax it to [Defendant Sheriff] Hudson asking him to get [Plaintiff] to a hospital get a cat scan and proper diagnosis." (*Id.*) Plaintiff further alleges that "the Sheriff will not let [Plaintiff] see the charge papers that he claims he served on Mr. Boykin. [Plaintiff] does not know what he was charged with or if he was even served a charge." (*Id.* at 10.)

Additionally, Plaintiff alleges that he has a "serious cavity on [his] front tooth that for a year [he has] been trying to get medical" to take him to a dentist. (*Id.*) Plaintiff alleges his requests have been ignored and his "tooth is bleeding." (*Id.*) Plaintiff alleges that he has been at the DCDC since October 2015, and he has "never been taken to a dentist for preventative dental care." (*Id.*)

Based on the foregoing conduct, Plaintiff alleges: (1) "the assault . . . by Defendant Travis Boykin violated the Plaintiff's rights under the Eighth Amendment . . . and constituted an assault and battery under state law"; (2) Defendant Captain Allison Days violated Plaintiff's rights under the Eighth Amendment "and constituted an assault and battery under state law"; and (3) Defendants Shannon O'Neil and Warden Coe violated Plaintiff's rights under the Eighth Amendment. (*Id.* at 13.) Plaintiff further seeks

> an injunction ordering Defendants Hudson, O'Neil or their agents to: (1) immediately arrange for the Plaintiff's need for repair of damage to his face and eye by a qualified physician; (2) to be evaluated by a medical practitioner with expertise in the treatment and restoration and function of the eye; [and] (3) carry out without delay the treatment directed by such medical practitioner.

(*Id.* at 13–14.) Plaintiff requests compensatory and punitive damages. (*Id.* at 14.)

In a later supplement to the Complaint, Plaintiff complains of being "remove[d]" out of the D Dorm by Director Mitch Stanley on June 13, 2025, and placed in "the punishment Dorm, A Dorm, where there is no table, chair, no hot or cold water and [it is] locked down for 23 hours." (Dkt. No. 41-2 at 1.) Plaintiff alleges he was in the D Dorm for "over four years" and he "never had a cellmate until last July when Director Coe and Captain Days started to put inmates in the

cell with him." (*Id.* at 2.) Plaintiff alleges that "Policy 44-48-20 does not mean an SVP cannot be in the same dorm with other inmates; it means in the same cell roommate with another inmate." (*Id.*) Plaintiff alleges his recent move to the A Dorm is an "unmitigated retribution plain and clear on Sheriff Michael August's part [and] Mitch Stanley must obey." (*Id.* at 3.) He names Sheriff Michael August as a Defendant "for submitting Plaintiff to cruel and unusual punishment" in violation of Plaintiff's constitutional rights. (*Id.* at 3–4.) Plaintiff asks to be moved from "this jail to a district prison" so that Defendants will not be able to "tamper[]" with Plaintiff. (*Id.* at 4.)

Plaintiff filed this action on September 13, 2024. (Dkt. No. 1.) The discovery deadline was most recently extended to September 23, 2025.[3] (Dkt. No. 103.) Plaintiff filed a Motion for Preliminary Injunction and for Temporary Restraining Order on July 15, 2025 (Dkt. No. 107), and he filed a Motion for Order to Show Cause and for Temporary Restraining Order on July 21, 2025 (Dkt. No. 110). Defendants filed responses in opposition to those motions in late July and early August (Dkt. Nos. 113; 115; 116; 117). Plaintiff filed three reply briefs (Dkt. Nos. 119; 120; 123) as well as a supplemental response in support of his Motion for Order to Show Cause and for Temporary Restraining Order (Dkt. No. 121). Subsequently, on August 21, 2025, Plaintiff filed a Motion Seeking Court's Injunction. (Dkt. No. 126.) Defendants August, Coe, Days, and Hudson ("DCDC Defendants") filed a response in opposition on September 4, 2025 (Dkt. No. 131), to which Plaintiff did not file a reply brief. Plaintiff's motions are ripe for review.

## STANDARDS OF REVIEW

### A.     Liberal Construction of Pro Se Complaint

---

[3] As further background, on September 8, 2025, the Court granted Defendants' motion to take Plaintiff's deposition. (Dkt. Nos. 130; 133.) On September 18, 2025, Defendants August, Coe, Days, and Hudson filed a Motion to Dismiss based on Plaintiff's refusal to participate in his deposition, which they attempted to take on September 16, 2025. (Dkt. No. 145.) On September 19, 2025, this Court issued an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the dismissal procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 145.) Plaintiff's response to the Motion to Dismiss is due by October 20, 2025. The dispositive motions deadline has been stayed, pending resolution of the Motion to Dismiss. (Dkt. No. 152.)

Plaintiff brought this action *pro se*, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. The mandated liberal construction means only that if the Court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### B.     Requirements for a Preliminary Injunction

The purpose of a preliminary injunction is to "protect the status quo and to prevent irreparable harm during the pendency of a lawsuit, ultimately to preserve the court's ability to render a meaningful judgment on the merits." *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003). A preliminary injunction is distinguished from a temporary restraining order only by the difference in notice to the nonmoving party and by the duration of the injunction. *U.S. Dep't of Labor v. Wolf Run Mining Co.*, 452 F.3d 275, 281 n.1 (4th Cir. 2006) (comparing Fed. R. Civ. P. 65(a) with Fed. R. Civ. P. 65(b)).[4]

A preliminary injunction is "an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in the limited circumstances which clearly demand

---

[4] Defendants were provided notice and responded to Plaintiff's instant motions. Therefore, the undersigned will construe Plaintiff's motions (Dkt. Nos. 107; 110; 126) as motions for a preliminary injunction. *See* Fed. R. Civ. P. 65(a). Regardless, "[t]he substantive standard for granting either a temporary restraining order or a preliminary injunction is the same." *Dyke v. Staphen*, No. 6:18-cv-402-TMC-KFM, 2018 WL 2144551, at *1 (D.S.C. Apr. 19, 2018), *adopted by*, 2018 WL 2136062 (D.S.C. May 9, 2018); *see also Virginia v. Kelly*, 29 F.3d 145, 147 (4th Cir. 1994) (showing that the standard for a temporary restraining order is the same as that applied to motions for preliminary injunction).

it." *Centro Tepeyac v. Montgomery Cty.*, 722 F.3d 184, 188 (4th Cir. 2013) (quoting *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811 (4th Cir. 1991)) (internal quotation marks omitted). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *United States v. South Carolina*, 720 F.3d 518, 524 (4th Cir. 2013) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)) (internal quotation marks omitted). Because granting a motion for preliminary injunctive relief "requires that a district court, acting on an incomplete record, order a party to act, or refrain from acting, in a certain way[,] [t]he danger of a mistake in this setting is substantial." *Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 693 (4th Cir. 1994) (quoting *Am. Hosp. Supply Corp. v. Hosp. Prods., Ltd.*, 780 F.2d 589, 593 (7th Cir. 1986)) (internal quotation marks omitted). Accordingly, the decision whether to grant a preliminary injunction is committed to the equitable discretion of the district court. *See Salazar v. Buono*, 559 U.S. 700, 714 (2010); *Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 543 (4th Cir. 2007).

In the prison context, courts should grant preliminary injunctive relief involving the management of correctional institutions only under exceptional and compelling circumstances. *See Taylor v. Freeman*, 34 F.3d 266, 270 n.2 (4th Cir. 1994). Under the Prison Litigation Reform Act ("PLRA"):

> In any civil action with respect to prison conditions, to the extent otherwise authorized by law, the court may enter a temporary restraining order or an order for preliminary injunctive relief. Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system.

18 U.S.C. § 3626(a)(2). The current standard for granting preliminary injunctive relief is set forth in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008). Under *Winter*, to obtain a preliminary injunction, the moving party must demonstrate:

> 1) he is likely to succeed on the merits,
>
> 2) he will suffer irreparable harm if the preliminary injunction is not granted,
>
> 3) the balance of equities favors him, and
>
> 4) the injunction is in the public interest.

555 U.S. at 20; *see also League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 236 (4th Cir. 2014). As to irreparable harm, the movant must show the harm to be "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd.* 952 F.2d at 812 (citation omitted). Moreover, *Winter* requires that each preliminary injunction factor "be 'satisfied as articulated.'" *Pashby v. Delia*, 709 F.3d 307, 320–21 (4th Cir. 2013) (quoting *The Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 347 (4th Cir. 2009), *vacated on other grounds, Citizens United v. FEC*, 558 U.S. 310 (2010), *aff'd, The Real Truth About Obama, Inc. v. FEC*, 607 F.3d 355 (4th Cir. 2010) (per curiam)). To succeed, Plaintiff must satisfy all four of these requirements. *Pashby*, 709 F.3d at 320–21. Therefore, the movant bears a heavy burden in seeking a preliminary injunction. *Id*. at 321.

## DISCUSSION

### A.    Motion for Preliminary Injunction and for Temporary Restraining Order (Dkt. No. 107)

In his initial Motion for Preliminary Injunction and for Temporary Restraining Order, Plaintiff alleges that mail from the Court is being opened by mail staff at the DCDC and that he has not received stationery or envelopes despite making requests. (Dkt. No. 107 at 1–2.) He also claims he attempted to send a temporary restraining order ("TRO") concerning "the Sheriff" on

July 2, 2025, but doubts it reached the Court because "they will not give him originals back" when Plaintiff asks that copies be made. (*Id.*) Plaintiff also states he "gave them [his] new 1983 appeal to go to District Court in Columbia," and "they [later] sent me a new application . . .saying they never received it." (*Id*. at 2.) Plaintiff asks this Court to compel "the Sheriff" to provide him with "the materials [he] need[s] to complete this case" and to prevent any alleged tampering with his legal mail. (*Id*.) To support his allegation of mail tampering, Plaintiff has submitted an "Inmate Mail Received Log Sheet." (Dkt. No. 120-1.) Plaintiff claims this document shows his "name was written in by someone on 6-13 then another legal mail came on the 24th and 25th some officer signed out but Plaintiff did not receive anything." (Dkt. No. 120 at 5.)

The undersigned recommends that the instant motion be denied because Plaintiff has not met the *Winter* factors. His filing does not address the merits of his case or the likelihood of success. The DCDC Defendants deny any interference with Plaintiff's legal mail (Dkt. No. 113), and the mail log sheet (Dkt. No. 120-1), without more, does not substantiate Plaintiff's allegations of mail tampering. There is no evidence that Plaintiff has missed a filing deadline or failed to present a claim as a result of any alleged mail tampering, and Plaintiff's frequent litigation activity belies his claims of insufficient access to legal materials. (*See* Dkt. Nos. 108; 109; 119; 120; 121; 122; 123; 125; 135; 140; 142; 143); *s*-*ee*, *e.g*., *Wise v. Ozmint*, No. 6:09-cv-153, 2009 WL 3232672, at *3 (D.S.C. Oct. 6, 2009) (noting that plaintiff's "numerous, lengthy, and timely filings indicate that he has been given a significant amount of access to both the prison law library and mailroom" and holding that where plaintiff "fails to show some actual injury resulting from denial of access to the courts, his assertion that he has been denied access" is without merit).

Moreover, Plaintiff has not demonstrated that he will suffer irreparable harm if the motion for an injunction is not granted. While Plaintiff speculates that a TRO motion has not reached the

Court, the record shows Plaintiff filed another motion seeking injunctive relief in July. (Dkt. No. 110.) Regardless, Plaintiff has not clarified what injunctive relief was sought in the alleged missing submission that is not covered in the three motions currently before the Court. Plaintiff's vague allegation as to the alleged interference with his "new 1983 appeal" is likewise insufficient. (Dkt. No. 107 at 2.) By Plaintiff's own account he was sent a "new application" and therefore can remedy any issues concerning that appeal. (*Id.*) In a reply brief dated August 8, 2025, Plaintiff states he "sent out two letters to the District Appeals Court in Richmond, VA last month inquiring about the Court's decision on his Motion for an Attorney. No reply." (Dkt. No. 120 at 5.) The record shows the Fourth Circuit Court of Appeals dismissed Plaintiff's appeal of the order denying his motion to appoint counsel on July 29, 2025. (Dkt. No. 114.) Thus, any confusion by Plaintiff of the status of that appeal has been resolved.[5] In short, Plaintiff's showing on this *Winter* factor is insufficient; "the clear showing of irreparable harm proffered by the movant cannot be either remote or speculative; it must be both actual and immediate." *Al-Abood v. El-Shamari*, 71 F. Supp. 2d 511, 514 (E.D. Va. 1999) (citing *Dan River, Inc. v. Icahn*, 701 F.2d 278, 284 (4th Cir. 1983)).

Finally, Plaintiff has failed to establish that the balance of equities tips in his favor, and he has failed to show that an injunction is in the public interest. As Plaintiff has not demonstrated a likelihood of success on the merits or more than a possibility of irreparable harm, and because the balance of the equities and the public interest involved do not warrant the extraordinary remedy of injunctive relief, Plaintiff's Motion for Preliminary Injunction and for Temporary Restraining Order (Dkt. No. 107) should be denied.

**B.     Plaintiff's Motion for Order to Show Cause and for Temporary Restraining Order (Dkt. No. 110)**

---

[5] In an abundance of caution, the undersigned instructs the Clerk of Court to mail Plaintiff a copy of the July 29, 2025 opinion (Dkt. No. 114).

In his Motion for Order to Show Cause and for Temporary Restraining Order, Plaintiff seeks an Order that:

> Defendants Michael August and Mitch Stanl[e]y show cause . . . why a preliminary injunction should not issue pursuant to Rule 65(a), Fed. R. Civ. P., enjoining said Defendants, their successors in office, agents, and employees and all other persons acting in concern and participation with them, specifically Captain Rogers and Sergeant Shannon, to require release from unlawful segregation and requiring delivery of all mail, notably legal mail. . . . Defendants August and Stanl[e]y shall arrange for the Plaintiff to be removed out of maximum segregation "A" dorm and to be put back in "D" dorm in the same cell and bed he had with no cell mate. . . . Defendants August and Stanl[e]y shall arrange for the Plaintiff to go to a law library for three hour[s] two days a week. . . . Defendants August and Stanl[e]y shall arrange for the Plaintiff to get all of his mail he never received in his property, including his legal mail from the Courts for this month of June. . . . Sheriff August answer the Plaintiff['s] accompanying "Plaintiff's Request for Admissions" at the Order to Show Cause Hearing.

(Dkt. No. 110 at 1–2.)

### 1.     Arguments and Evidence

In his accompanying "Declaration in Support of Temporary Restraining Order and Preliminary Injunction," Plaintiff claims that as a result of filing this lawsuit, he was moved to "A" dorm, which he describes as the "punishment dorm." (Dkt. No. 110-1 at 2, 4.) Plaintiff alleges he receives recreation "maybe twice a week for one hour," lacks a "call button in the cell," and the "officer is hardly at the desk, especially on weekends." (*Id.*) Plaintiff further alleges that he was able to shower twice in a period of "two and a half weeks," there are no "fire sprinkler[s] in any of the cells," and he must wash his hands in dishes "in the toilet bowl with no disinfectant" because "the sink faucets won't stay on but for a couple seconds." (*Id.* at 2–5.) Plaintiff further objects to the "legal research source[,] . . . Fastcase[,]" being provided on a "super tiny screen on an old model iPhone." (*Id.* at 5.) He claims "searching takes forever" and is "tedious and tiresome to the eyes." (*Id.*) For this reason, Plaintiff asserts he needs access "to a law library to get to a law computer to find some work for this case." (*Id.*) Plaintiff has attached to his Motion a document

titled "Plaintiff's Request for Admission," which request that "Defendant Michael August . . . make the following admissions" pursuant to "Rule 36, Fed. R. Civ. P." (Dkt. No. 110-4.) This "Request for Admission" is the subject of Plaintiff's final "Motion for Seeking Court's Injunction," discussed *infra* section C.

The DCDC Defendants (hereafter, "Defendants") have filed a response in opposition (Dkt. No. 116) and have also submitted an affidavit from non-party Major Mitch Stanley ("Major Stanley"), the current Director of the DCDC (Dkt. No. 116-1).[6] In his affidavit, Major Stanley explains that he has served as the Director "since January 2025 when [he] was appointed to the position by Sheriff Michael August upon his election to office." (*Id*. at 2.) Major Stanley provides extensive affidavit testimony about the differences between A-Dorm and D-Dorm, explaining:

> The DCDC is made up of several residential areas that include, among others, D-Dorm and A-Dorm. When detainees arrive at DCDC, they are ordinarily assigned to housing areas based on the classification of their charges, but space considerations may sometimes affect placement in the dormitories. Generally, D-Dorm is designated for detainees with charges that are considered less serious in terms of potential sentencing. Due to the minimum-security classification status, detainees in D-Dorm are allowed daily recreational privileges. D-Dorm is considered minimum security and is made up of an open-plan housing unit where detainees are free to roam about the area during waking hours. D-Dorm does not have individual locking cells. Instead, D-Dorm contains cubicle areas that are open to the center of the dormitory, where there are multiple cots within a cubicle. . . .
>
> Generally, A-Dorm is for detainees with criminal charges that would carry lengthier sentences if they are convicted. A-Dorm also accommodates detainees who need protective custody due to security concerns when those arise. A-Dorm is more accommodating for detainees with protective concerns because it has individual cells with doors and allows for detainees to be housed individually, if applicable. Each A-Dorm cell contains a bed and a combination toilet and faucet-sink assembly. A-Dorm also accommodates protective concerns because the detainees housed there are required to be escorted by DCDC Officers while they are handcuffed and shackled. Detainees housed in the A-Dorm are provided one (1) hour of recreation time per day so long as staffing levels permit. During recreation time, A-Dorm detainees may choose to shower and/or go outside for recreation.

---

[6] Major Stanley has not been named as a defendant in this action. Indeed, Plaintiff's supplement to the Amended Complaint expressly states Plaintiff "does not want to add the Director as one of the Defendants," and "it is Sheriff Michael August Plaintiff wants to add as a Defendant." (Dkt. No. 41-2 at 3–4.)

(*Id*. at 3–4.)

In his affidavit, Major Stanley states that Plaintiff "began to express his security concerns about the DCDC after I assumed the role as Director." (*Id.* at 2.) More specifically, Major Stanley avers,

> On or about June 16, 2025, Mr. Tyler was moved from D-Dorm to A-Dorm in direct response to Mr. Tyler's notification to me that he had security concerns with his housing status in D-Dorm—specifically, that he needed to be housed individually in a cubicle due to the threat of violence against him if he had someone assigned to his cubicle.

(*Id.* at 3.) Major Stanley avers that "A-Dorm is the only unit at the DCDC capable of addressing such protective concerns, as the open layout and configuration of D-Dorm allows detainees to freely intermingle without restriction." (*Id.* at 5.) According to Major Stanley, Plaintiff "was placed in a single cell in the A-Dorm" to "accommodate his concern that he be housed individually." (*Id.* at 4.) "His cell is directly aligned with the DCDC Officer's desk in the A-Dorm so he can alert an Officer should he have any issues or concerns." (*Id.*)

Major Stanley further explains that

> the DCDC is nearing capacity for detainees and, as such, bed space is at a premium such that Mr. Tyler's requested classification status—that he be housed one bed to a cubicle in the D-Dorm—is no longer logistically feasible, even if Mr. Tyler did not express protective concerns. The timing of the movement of Mr. Tyler from the D-Dorm to the A-Dorm also involved DCDC security staff's evaluation of available bedspace in multiple housing units.

(*Id.*) According to Major Stanley, "[t]he decision to move Mr. Tyler from D-Dorm to A-Dorm was a discretionary decision to maximize Mr. Tyler's safety and security and to balance the staffing and logistical concerns of housing other detainees of the DCDC efficiently." (*Id.* at 6.)

Specific to Plaintiff's complaint of limited recreation hours, Major Stanley avers that "DCDC policy and procedure allows for a daily recreational privilege, [however] periods of

staffing shortages may temporarily curtail recreation across the facility, including the A-Dorm where staff is necessary to escort detainees to and from their cells. Detainees housed in the A-Dorm are not singled out in this regard." (*Id*. at 5.) Major Stanley further explains that "because of his security concerns with other detainees of the DCDC, Mr. Tyler's recreation time (shower or exercise at his choice) is specifically conducted alone to minimize his interaction with other detainees." (*Id*. at 4.)

As for Plaintiff's allegations concerning access to legal materials, Major Stanley avers that "regardless of his housing in the A-Dorm, Mr. Tyler still has the same access to legal materials . . . as he did in the D-Dorm." (*Id*. at 6.) More specifically, Major Stanley avers that Plaintiff's "legal materials . . . are in his cell with him at all times," and Plaintiff is "given access to the legal software Fastcase on DCDC provided computer tablets, . . . like other detainees of the DCDC." (*Id*.) Major Stanley claims that Plaintiff's "request that he be allowed access to a separate law library is a deviation from DCDC policy and procedure and would pose logistical and safety burdens on DCDC staff." (*Id*.) Further, Major Stanley is "not aware of a specific 'law library' in Darlington County even if DCDC was required to provide such a service." (*Id*.) Finally, Major Stanley avers there has been "no curtailment or limitation of Mr. Tyler's access to grievances, medical care or the mail due to his housing in the A-Dorm." (*Id*.)

## 2. Analysis

Upon review, the Court finds that Plaintiff has failed to make the required showing under *Winter*. First, Plaintiff has failed to demonstrate a likelihood of success on the merits of his claims for injunctive relief. Relevant here, Plaintiff alleges that his move to the A-Dorm constitutes punishment in violation of his constitutional rights, and he complains of the conditions of confinement in this particular dorm. Because Plaintiff's status appears to be most similar to that

of a pre-trial detainee, the Fourteenth Amendment (rather than the Eighth Amendment applicable to convicted prisoners) applies to these allegations. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979).

Because pre-trial detainees have not been convicted of any crime, they may not be subjected to punishment. *City of Revere v. Mass. Gen. Hosp*., 463 U.S. 239, 244 (1983). However, "not every inconvenience encountered during pretrial detention amounts to 'punishment' in the constitutional sense." *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988) (citing *Bell*, 441 U.S. at 537). To establish that a particular condition or restriction of his confinement is constitutionally impermissible "punishment," a pretrial detainee must show either that it was "(1) imposed with an expressed intent to punish or (2) not reasonably related to a legitimate nonpunitive governmental objective, in which case an intent to punish may be inferred." *Short v. Hartman*, 87 F.4th 593, 606 (4th Cir. 2023) (quoting *Martin*, 849 F.2d at 870).

"Absent a showing of an expressed intent to punish on the part of detention facility officials," the court's determination on this matter "generally will turn on whether an alternative purpose to which the restriction may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned to it." *Bell*, 441 U.S. at 538 (internal quotation marks and alterations omitted). "Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Id*. at 539. "Conversely, if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." *Id*. "Whether it be called a jail, a prison, or a custodial center, the purpose of the facility is to detain. Loss of freedom of choice and privacy are inherent incidents of confinement in such a facility." *Id.* at 520.

14

As an initial matter, Plaintiff's claims regarding his placement in A-Dorm and resulting conditions of confinement largely rest on his unsubstantiated allegations. "The Court cannot issue such injunctions or restraining orders based on such unsubstantiated claims, which Plaintiff will be able to fully litigate and have resolved in his underlying action." *Page v. Padula*, No. 9:09-cv-0952-HFF-BM, 2009 WL 3332991, at *2 (D.S.C. Oct. 15, 2009), *as amended* (Oct. 19, 2009) (denying TRO motion because "Plaintiff makes only general and conclusory allegations in his motion with respect to purported violations of his constitutional rights regarding the conditions of his confinement"); *see also Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017) (stating the moving party must "clearly establish[ ]" entitlement to the injunction he wants). Further, Major Stanley's affidavit testimony indicates that Plaintiff's transfer to a higher-security dorm was for legitimate security and logistical reasons and not as a form of punishment. (*See* Dkt. No. 116-1.) *See Bostic v. Ray*, No. 3:24-cv-26-DCN-PJG, 2025 WL 1373040, at *5 (D.S.C. Jan. 31, 2025) (recommending summary judgment be granted on substantive due process claim because pretrial detainee "has failed to forecast evidence that his confinement in an individual housing unit rather than an open pod was expressly punitive; unrelated to a legitimate, nonpunitive government interest; arbitrary; or excessive"), *adopted by*, 2025 WL 1373131 (D.S.C. Mar. 14, 2025); *see also Bell*, 441 U.S. at 547–48 ("Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.")

To the extent Plaintiff's instant Motion implicates a First Amendment retaliation claim, Major Stanley's affidavit testimony (Dkt. No. 216-1) likewise indicates a legitimate non-retaliatory reason for Plaintiff's move to A-Dorm. *See*, *e.g.*, *Nieves v. Bartlett*, 587 U.S. 391, 399 (2019) (explaining that in a First Amendment retaliation claim the plaintiff must prove "that the

adverse action against the plaintiff would not have been taken absent the retaliatory motive");
*Roberts v. Sires*, No. ELH-20-cv-2791, 2023 WL 4134697, at \*14 (D. Md. June 21, 2023) ("[A]
retaliation claim fails if there is a legitimate reason for the alleged retaliatory action.") (citing *Mt.
Healthy City Sch. Dist. Bd. Of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

And "[a]lthough it is well-established that there is a constitutional necessity for some out-
of-cell exercise, it is equally recognized that penological considerations may justify restrictions."
*Koon v. Ozmint*, No. 806-cv-1072-RBH, 2007 WL 1585161, at \*1 (D.S.C. May 21, 2007) (citing
*Mitchell v. Rice*, 954 F.2d 187, 192 (4th Cir. 1992)). Here, Major Stanley's testimony indicates
any restriction on Plaintiff's recreation activity is due to insufficient staffing levels, which apply
to all detainees at DCDC. (Dkt. No. 116-1 at 5.) Thus, it appears likely there is a legitimate
penological safety concern that justifies any alleged loss of outdoor recreation.

With respect to Plaintiff's allegations regarding the denial of his access to a law library,
Plaintiff "must demonstrate with some specificity that this right was interfered with, and must also
show that this interference with his rights resulted in some sort of actual injury." *Joe v. Ozmint*,
No. 2:08-cv-0585-PMD-RSC, 2008 WL 5076858, at \*9 (D.S.C. Nov. 21, 2008) (citing *Lewis v.
Casey*, 518 U.S. 343, 349 (1996)). By Plaintiff's own account, he has access to Fastcase, "a legal
research source." (Dkt. No. 110-1 at 5.) While Plaintiff complains that using this legal resource is
"tedious," he does not have a constitutional right to a law library, and there is no evidence that his
alleged lack of access to a "law library" has caused him actual injury. *See Jones v. Lexington Cnty.
Det. Ctr.*, 586 F. Supp. 2d 444, 448 (D.S.C. 2008) ("[T]he law is quite clear that those being
temporarily detained in county facilities awaiting criminal trials do not have a constitutional right
to a law library."). Also, as discussed *supra* section A, Plaintiff's frequent litigation activity belies
his claims of insufficient access to legal materials and mail tampering. *See Wise*, 2009 WL

16

3232672, at *3 (noting that plaintiff's "numerous, lengthy, and timely filings indicate that he has been given a significant amount of access to both the prison law library and mailroom" and holding that where plaintiff "fails to show some actual injury resulting from denial of access to the courts, his assertion that he has been denied access" is without merit.). For these reasons, Plaintiff has failed to demonstrate a clear likelihood of success on the merits of his motion.

Next, Plaintiff has failed to make a clear showing that he will suffer irreparable harm absent the injunctive relief. As discussed above, the evidence indicates Plaintiff currently has access to a legal research source, and his frequent litigation activity belies any claims of injury. With respect to Plaintiff's allegations about his transfer to A-Dorm and the related restrictions, Major Stanley's affidavit testimony indicates that "A-Dorm is the only unit at DCDC capable of addressing [Plaintiff's] protective concerns and configuration allows detainees to freely intermingle without restriction." (Dkt. No. 216-1 at 5.) Thus, it appears that the injunctive relief Plaintiff seeks on this issue, specifically, a transfer back to D-Dorm, would not resolve Plaintiff's security concerns underlying this action. In short, Plaintiff's showing on this *Winter* factor is insufficient; "the clear showing of irreparable harm proffered by the movant cannot be either remote or speculative; it must be both actual and immediate." *Al-Abood*, 71 F. Supp. 2d at 514.

Finally, Plaintiff has failed to establish that the balance of equities tips in his favor, and he has failed to show that an injunction is in the public interest. In *Bell v. Wolfish*, the United States Supreme Court emphasized "[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." 441 U.S at 547. The Fourth Circuit Court of Appeals recently echoed this finding, stating "[p]rison administrators deserve substantial deference to design policies and procedures in the best interests of their

institutions." *Lumumba v. Kiser*, 116 F.4th 269, 286 (4th Cir. 2024), *cert. denied*, 145 S. Ct. 1189, 221 L. Ed. 2d 266 (2025). Granting Plaintiff's requested relief of a transfer back to D-Dorm would require the Court to ignore the "substantial deference" afforded to the housing and security decisions of the DCDC officials. And the undersigned cannot conclude that the public interest would be best served by mandating such extraordinary relief where the record contains no evidence to substantiate Plaintiff's allegations other than his limited declaration testimony. (*See* Dkt. No. 110-1); *see Direx Israel, Ltd*., 952 F.2d at 811 ("Federal decisions have uniformly characterized the grant of interim relief as an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in the limited circumstances which clearly demand it.").

As Plaintiff has not demonstrated a likelihood of success on the merits or more than a possibility of irreparable harm, and because the balance of the equities and the public interest involved do not warrant the extraordinary remedy of injunctive relief, Plaintiff's Motion for Order to Show Cause and for Temporary Restraining Order (Dkt. No. 110) should be denied.

C.     **Plaintiff's "Motion for Seeking Court's Injunction to Defendant Michael August's Response to Plaintiff's Request for Admission" (Dkt. No. 126)**

In his final motion, Plaintiff appears to dispute the sufficiency of Defendant August's responses to Plaintiff's Requests for Admission, which were served upon August during discovery. (Dkt. No. 126.) Plaintiff indicates these are the same "Request for Admission" attached to his Motion for Order to Show Cause and for Temporary Restraining Order. (*Id.*; *see* Dkt. No. 110-4.) Plaintiff asks that the Court order Defendant August to appear "at the temporary restraining order hearing" and "before [August] responds, the Court should be inform [sic] if what August says that can be verified is truth so that no fraud upon the Court can happen." (Dkt. No. 126 at 2 (verbatim).) Plaintiff further asks the Court "to investigate" the veracity of August's responses to the Requests for Admission "by sending an agent of the Court [to DCDC] with a video recording and bring back

18

visual evidence of the truth." (*Id.*) Plaintiff asserts this same "court officer" or "agent" should speak with "other inmates" and obtain various recordings, which Plaintiff maintains will substantiate his allegations in this case. (*Id.* at 2–5.) According to Plaintiff, "after the investigation," Defendant August "will be found to have introduced fraud upon the Court." (*Id.* at 5.) In their response, Defendants "deny Plaintiff's allegations that they have introduced fraud upon the Court" and assert that "Plaintiff's requested relief is not legally available." (Dkt. No. 131 at 3–4.)

As an initial matter, to the extent Plaintiff is requesting a hearing on this motion or any of the motions herein, the undersigned recommends this request be denied. Based on the current record, there is no need for a hearing to resolve Plaintiff's Motions. *See* Local Civil Rule 7.08, D.S.C. ("Hearings on motions may be ordered by the court in its discretion. Unless so ordered, motions may be determined without a hearing."). While Plaintiff couches this Motion as one for injunctive relief, he does not articulate any of the *Winter* factors. His filing does not address the merits of his case or the likelihood of success, and Plaintiff has not demonstrated that he will suffer irreparable harm if the motion for an injunction is not granted. Plaintiff also does not explain how the balance of equities tips in his favor, and he offers no argument that an injunction would be in the public interest. Notwithstanding Plaintiff's failure to articulate the applicability of any of the *Winter* factors, Plaintiff's Motion seeks relief which this Court simply cannot provide.

The record indicates Plaintiff takes issue with Defendant August's responses to his Requests for Production, which were served pursuant to Rule 36 of the Federal Rules of Civil Procedure. Instead of pursuing the proper procedures under the Federal Rules of Civil Procedure to challenge Defendant August's responses to Plaintiff's discovery requests, Plaintiff has moved for the Court to act as an investigative body to verify the truth of August's discovery responses.

As asserted by Defendants, such a request is contradictory to the Court's role as a neutral arbiter. *See Lester v. Leach*, No. 7:24-cv-00404, 2024 WL 3823823, at *1 (W.D. Va. Aug. 14, 2024) (denying *pro se* inmate's motion for injunctive relief, which asked "the court to investigate the disciplinary charge"; noting "the court is not an investigative agency. Rather, the court adjudicates cases that parties present based on the evidence that they bring in support of their claims.").

For these reasons, the undersigned recommends denying Plaintiff's "Motion for Seeking Court's Injunction to Defendant Michael August's Response to Plaintiff's Request for Admission." (Dkt. No. 126.)

## CONCLUSION

Because Plaintiff has not established the *Winter* elements, it is RECOMMENDED that the Court DENY Plaintiff's Motion for Preliminary Injunction and for Temporary Restraining Order (Dkt. No. 107); Motion for Order to Show Cause and for Temporary Restraining Order (Dkt. No. 110); and Motion Seeking Court's Injunction (Dkt. No. 126).

**IT IS SO RECOMMENDED.**

September 29, 2025

Charleston, South Carolina

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).